**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **WALTER POWERS, JR., et al.**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-5993** |
| **NEW ORLEANS CITY, et al.**<br>    **Defendants** | **SECTION "E"** |

**ORDER & REASONS**

Before the Court is Plaintiffs' motion for a preliminary injunction,[1] which Intervenor Police Association of New Orleans ("PANO") and Defendant Civil Service Commission for the City of New Orleans, Parish of Orleans ("CSC") support[2] and Intervenor the United States and Defendants City of New Orleans, the Mayor, and the Superintendent of the New Orleans Police Department (together, "the City") oppose.[3]  For the following reasons, the motion is **DENIED**.

**BACKGROUND**

Plaintiffs commenced this action by filing a petition in Civil District Court for the Parish of Orleans, which was assigned to Judge Kern A. Reese.  In their petition, Plaintiffs assert several causes of action.  They allege that the City "usurped Defendant CSC's [Louisiana] constitutional and statutory pay plan powers and responsibilities by enacting

---

[1]    R. Doc. No. 28.

[2]    R. Doc. No. 35.  CSC's support is limited to the issue whether it rather than the City Council should have set the pay rates for the work at issue.  In its brief, CSC took the position that the issue of its jurisdiction requires further study.  R. Doc. No. 38.  But at the hearing it took a position, asserting that CSC should have set the rates.

[3]    R. Docs. Nos. 43, 44.

a pay plan law without prior approval of Defendant CSC."[4]   They next allege that various ordinances enacted by the City to effectuate the secondary employment (paid detail) provisions of the Consent Decree[5] violate the Contract Clause of the United States and Louisiana Constitutions.[6]   They last allege that the ordinances violate Louisiana's constitutional prohibition on taking a "business enterprise or any of its asserts . . . for the purpose of operating that enterprise or halting competition with a government enterprise."[7]

On September 16, 2011, the state court set a hearing for October 11, 2013, on Plaintiffs' request for a preliminary injunction to enjoin the City from enforcing the ordinances.  The City then filed a notice of removal with this Court, after which the case was transferred to this Section as related to the Consent Decree.[8]

Shortly thereafter, Plaintiffs filed a motion to remand and CSC filed a motion to dismiss for lack of jurisdiction.  After briefing and a hearing, the Court denied both

---

[4]    R. Doc. No. 1-2, p. 6.

[5]    The Consent Decree, entered into by the City and the United States, is a judgment of this Court and may be found at *United States v. City of New Orleans*, No. 12-1924 (E.D. La. filed July 24, 2012).

[6]    R. Doc. No. 1-2, p. 7 (citing La. Const. art. I, § 23; U.S. Const. art. I, § 10).

[7]    R. Doc. No. 1-2, p. 7 (citing La. Const. art. I, § 4(B)(6)).

[8]    Plaintiffs filed another suit in this District asserting claims concerning CSC's jurisdiction similar to those made in this case as well two different causes of action (under the Fair Labor Standards Act and Federal Insurance Contributions Act), but asking for the same ultimate relief with respect to secondary employment.  *Powers v. City of New Orleans*, No. 13-5819 (E.D. La. filed Sept. 12, 2013).  That action was also transferred to this Court.

motions.[9]  Having concluded that it possesses jurisdiction, the Court then granted PANO and the United States permission to intervene.[10]

    With those preliminary matters concluded, the Court held a hearing on Plaintiffs' motion.  Sergeant Joseph Catalanotto, Captain William Ceravolo, and Captain Frederick Morton, all officers with the New Orleans Police Department ("NOPD"), testified on behalf of Plaintiffs.  Lisa Hudson, Personnel Director of the City of New Orleans, testified on behalf of CSC, and Andrew Kopplin testified on behalf of the City.  PANO and the United States participated by way of direct and cross-examination but offered no witnesses.  The matter was then argued and submitted to the Court on October 18, 2013.

**STANDARD OF LAW**

    A plaintiff seeking a preliminary injunction must make a clear showing that the case satisfies the following four criteria before an injunction may issue:  (1) a substantial likelihood exists that plaintiff will succeed on the merits of the claim; (2) a substantial threat of irreparable harm exists if the injunction is not granted; (3) the threatened injury outweighs any harm to the defendants if the injunction is granted; and (4) the injunction will not undermine the public interest. *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997); *Ingebresten v. Jackson Public School Dist.*, 88 F.3d 274, 278 (5th Cir. 1996); *Doe v. Duncanville Independent School Dist.*, 994 F.2d 160, 163 (5th Cir. 1993); *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985).  The movant

---

[9]     R. Doc. No. 47.

[10]    R. Doc. No. 48.

3

must satisfy all four factors; a failure to satisfy even one of the four factors requires a denial of the preliminary injunction.[11] *Mississippi Power & Light v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

The Fifth Circuit has frequently cautioned that a preliminary injunction is an "extraordinary remedy," which should be granted only if the movant has clearly carried the burden of persuasion on all four of the above prerequisites. *See, e.g., Cherokee Pump & Equipment Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994) (quoting *Mississippi Power & Light*, 760 F.2d 618). As a result, "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Id.*; *House the Homeless, Inc. v. Widnall*, 94 F.3d 176, 180 (5th Cir. 1996).

## ANALYSIS

Plaintiffs present three theories under which they assert they are entitled to relief. They assert that the City Council ordinances establishing the Office of Police Secondary

---

[11]     Plaintiffs assert that "[a] Louisiana plaintiff is entitled to injunctive relief without the requisite showing of irreparable injury when the conduct sought to be restrained is unconstitutional or unlawful, *i.e.,* when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law and/or violation of a constitutional right." R. Doc. No. 28, p. 2 (internal quotation marks and citations omitted). Whether or not that is the rule in Louisiana state courts, it is not the rule in federal court, where federal law controls the availability of injunctive relief. *Heil Trailer Int'l Co. v. Kula*, 2013 WL 5630969, at *4 n. 22 ("'[F]ederal law governs the procedural questions when a preliminary injunction may issue and what standards of review we apply.'" (quoting *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010))). As the only one of the Plaintiffs to testify asserted that the harm he faces is a financial injury, and as financial injuries are not irreparable, this alone would justify denying the injunction.

Employment ("OPSE") required by the Consent Decree:  (1) unlawfully usurp CSC's jurisdiction to set pay rates; (2) unconstitutionally interfere with their contractual rights; and (3) violate Louisiana's constitutional prohibition on expropriation of a business enterprise.  The Court concludes that Plaintiffs cannot show a substantial likelihood of success on the merits because their claims fail as a matter of law.  Accordingly, the Court must deny Plaintiffs' request for a preliminary injunction.

### I.  CSC's Jurisdiction

At the hearing, Plaintiffs, PANO, and CSC took the position that it was improper for the City Council to adopt an ordinance setting the rates of pay for NOPD officers engaged in secondary employment because CSC has the exclusive authority to establish a uniform pay plan for persons engaged in City service or the Civil Service of the City,[12] and "[j]obs that are necessary for the discharge of the functions of City, agencies, boards and commissions are . . . presumed to be included in the classified service unless specifically excluded therefrom."  Civil Service Commission Rules & Procedures Rule III, § 6.1.  But Louisiana law is clear: police secondary employment is not within CSC's jurisdiction, because it is private work for third parties rather than City service.

---

[12]   CSC's rules define these terms as "all offices and positions of trust or employment with the city, any department, agency, board or commission thereof, or corporation organized for public purposes, including persons employed by city or joint federal and city agencies administering city and federal relief and other funds, other than the military and naval service, irrespective of whether the pay for the offices and positions of trust or employment be paid out of the city treasury either in whole or in part, except those excepted by the provision of Article X of the Constitution of Louisiana."  Civil Service Commission Rules & Procedures Rule I, § 1.14.

In *Hebert v. New Orleans Police Department*, a police officer argued that NOPD's decision to suspend his privilege to work paid details "is within the [CSC's] constitutional grant of jurisdiction."  805 So. 2d 345, 352 (La. Ct. App. 2001).  The Louisiana Fourth Circuit found his argument "unpersuasive," because "paid details" are "off-duty employment of officers."  *Id.*  It therefore held that the "suspension of detail privileges" is "beyond the Commission's constitutional grant of jurisdiction."  *Id.*  In *Sterling v. Board of Commissioners*, the Louisiana First Circuit held that detail work by a harbor policeman is "private" rather than "civil service," so CSC "lacks the authority to render a decision regarding the suspension" of the privilege to engage in detail work.  527 So. 2d 1122, 1125 (La. Ct. App. 1988).

Louisiana law is thus clear that CSC lacks jurisdiction over police officers when they engage in secondary employment. As Lisa Hudson testified at the hearing, this has historically been CSC's understanding as well.  Accordingly, until now, CSC has not claimed jurisdiction over police officers when they engage in secondary employment—and other than a few disgruntled officers challenging disciplinary action prohibiting them from engaging in detail work, it also does not appear that police officers have asserted CSC should.

Plaintiffs and PANO assert that the Consent Decree has upset this settled understanding, because now the City must set transparent rates and collect and disburse the payments from third parties to officers, as well as coordinate the assignment of officers to details through OPSE.  Hudson took a narrower position, however, asserting that CSC might now have jurisdiction because, under the Consent Decree, payments to officers will

be disbursed from a City account rather than being paid directly by the private employer.[13]

In the first instance, the authority of the City to coordinate detail assignments is not, as Plaintiffs and PANO would have it, an invention of the Consent Decree. While OPSE is new, the City has had the authority to coordinate assignments all along by its authority to approve each paid detail an officer wishes to work. NOPD Operations Manual Ch. 22.8 ("[I]t is the intent of the Superintendent of Police that any and all details are reviewed and approved by his office for appropriateness.") (February 1, 2004). The City is simply exercising its unchallenged authority to approve details for "appropriateness" based on different and clearer guidelines, now developed and implemented by OPSE rather than the Superintendent.

The fact that payments now flow from private employers to the City before being disbursed to officers changes nothing. As the Labor Department has recognized in a related context, third party employers of police officers do not lose their "separate and independent" status merely because rules "require [they] pay the fee for such [secondary employment] services directly to the department" or because the department "establish[es] procedures for the officers to receive their pay for the special details through the agency's payroll system." 29 C.F.R. § 553.227(d). This is why officers must show more than that a

---

[13]      CSC asserted in closing that if the fund through which payments to officers will pass had been set up as a trust account, there would be a much weaker argument for it now possessing jurisdiction. But it did not explain how a pass-through trust account instead of a pass-through non-trust account, but still subject to all the accounting and audit requirements applicable to any City fund, would change the analysis, and the Court is not inclined to look for these form-over-substance distinctions.

city "serv[es] as a conduit for payment" in order to be entitled to overtime payments under the Fair Labor Standards Act for their detail work. *Jackson v. City of San Antonio*, 2006 WL 2548545, at *7 (W.D. Tex. 2006).

These conclusions are formed against the backdrop of the role of CSC under Louisiana law. "The purpose of the Civil Service Commission is to secure adequate protection for public career employees," *Christoffer v. Department of Fire*, 734 So. 2d 629, 631 (La. 1999), so as to "guarantee the security and welfare of public service." *Sanders v. Department of Health and Human Resources*, 388 So.2d 768, 771 (La. 1980). But public service cannot be implicated when police officers engage in voluntary, off-duty work and are paid by private third parties. To hold otherwise would result in the untenable conclusion that private third parties are able to exercise control over the public service. Private employers can have no claim to police officers' "office[]" or "position of trust" or "employment with the city." Those are held and exercised for the benefit of the public generally.

## II.  The State and Federal Contract Clause

Plaintiffs and PANO next assert that the ordinances establishing OPSE work an unconstitutional impairment of existing contracts under state and federal law. As standards governing a challenge based on the Contract Clause of Louisiana and Federal Constitution are "substantially equivalent"—in fact, they are "virtually identical"—the Court will treat both challenges together. *Board of Comm'rs of Orleans Levee Dist v. Dep't of Nat. Res.,* 496 So. 2d 281, 291 (La. 1986). In order to state a claim for an unconstitutional impairment of contracts, the plaintiff must show a "substantial impairment of a contractual

relationship" that either is not grounded in a "significant and legitimate public purpose" or which is not "reasonable and necessary" to achieve that purpose. *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 269 F.3d 494, 504–05 (5th Cir. 2001).

Assuming without deciding that Plaintiffs and PANO have been able to show the existence of contracts still in effect between them and a third party for detail work, they cannot show that the ordinances establishing OPSE have substantially impaired them.[14] As every witness acknowledged, "[p]ermission to work paid details is a privilege"—not a right. NOPD Operations Manual, Ch. 22.8. The Superintendent of Police must approve every paid detail, "[a]pproval to work paid details shall not be automatic," and "[a]uthorization to work paid details may be revoked or denied at any time by the member's Division Commander, Bureau Chief, or the Superintendent of Police." *Id.* That reality—the inability of any police officer ostensibly contracting to provide secondary employment services to guarantee his ability to provide those services—calls into question whether police officers have the capacity to contract to provide detail work at all. But even assuming they do, a necessary term of officers' contracts is one that specifies the City may, in its sole discretion, prevent the officer from working the detail.

---

[14]     PANO put on no witnesses to establish the existence of any contracts, and only one of the Plaintiffs testified in general terms about the existence of contracts (with nebulous terms) he has for secondary employment. While the testimony from Sergeant Catalanotto and Captain Ceravolo provided useful background information, Plaintiffs have repeatedly asserted that (despite what appears in the case caption) they brought this action on their own behalf and not on behalf of the Fraternal Order of Police or as a class action. Accordingly, whatever contracts Sergeant Catalanotto and Captain Ceravolo may or may not have, they cannot provide a basis for relief to Plaintiffs.

The City previously exercised that authority solely through the Superintendent.  It now exercises that authority through the Superintendent and OPSE.  The implicit, but necessary, term of the contract between the *police officer* and the *third party employer*, the term that specifies the City may decide if and when and how the police officer engages in the secondary employment, has not changed, however.[15]  The City is still in control of if and whether and how police officers may engage in secondary employment.  The City has simply decided (or more precisely, is now required by the Consent Decree) to exercise its sole discretion in a different manner.  That does not change the term of the contract between the police officer and the third party employer that left to the City's discretion whether the officer would be allowed to work the detail.

Even if the ordinances establishing OPSE did work a substantial impairment of police officers' contracts, they serve the legitimate public purpose of effectuating the terms of the Consent Decree, which the Court previously concluded—and the Fifth Circuit affirmed—were fair, adequate, and reasonable terms to achieve constitutional policing in the City of New Orleans.  That conclusion, like the legitimacy of the Consent Decree, is no longer open for discussion.  Neither is the reasonableness of the remedies contained in the Consent Decree to achieve its ends.  And even if it were, "[i]n cases involving impairment of contracts between private parties"—and contracts between an off-duty police officer and

---

[15]    Only the contract between the police officer and the third-party employer is relevant in this analysis, as it is the only contract that Plaintiffs allege has been impaired.

a private, third-party employer are contracts between private parties[16] —"the court does not independently review the reasonableness of" the impairment to determine its fit with the legislative purpose that motivated the impairment. *Lipscomb*, 269 F.3d at 505.  Instead, courts "should defer to the judgment of the legislature." *Id.*

### III.  Louisiana's Anti-Expropriation Provision

Plaintiffs also assert that the ordinances implementing OPSE violate Louisiana's constitutional provision that states:  "No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise." La. Const. art. I, § 4(B)(6).  But no "business enterprise or any of its assets" has been "taken," and even if so, not "for the purpose of operating that enterprise or halting competition with a government enterprise."  Assuming without deciding that secondary employment may qualify as a business enterprise, police officers have no right—not even a conditional right—to engage in this enterprise. *See generally* NOPD Operations Manual, Ch. 22.8.  There can therefore be no taking when the privilege of engaging in secondary employment is taken away from them—and, as every witness acknowledged, the ability to engage in secondary employment has not been taken away from officers.

Even if there had been a taking, the City does not via OPSE "operate" the business of secondary employment (or provide a competing business).  The officers perform the

---

[16]    Certain contracts, such as those between the City and legislatively created taxing districts, may not be contracts between private parties.  They are not the subject of this litigation, however, as the Court previously ruled that Plaintiffs lacked standing to raise claims based on them and the one Plaintiff to testify did not claim he himself possesses a contract with a taxing district.

work, and the officers are paid for the work.  The City receives only an administrative fee—paid by the employer, rather than deducted from the officer's pay—to cover the costs of running OPSE.  And, "[a]ny fees collected in excess of the amount actually required for operation of the Office of Police Secondary Employment shall be proportionally refunded to the officers annually."  N.O Ord. Cal. No. 29,470, § (b)(3).

CONCLUSION

Plaintiffs' claims fail as a matter of law.  They are therefore obviously unable to show a substantial likelihood of success on the merits of their claim.  Accordingly, their motion for a preliminary injunction must be and is **DENIED**.

**New Orleans, Louisiana, this 21st day of October, 2013.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**